UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN FOLEY,                                      Case No. 16-10574

        Plaintiff,                        Arthur J. Tarnow
v.                                               United States District Judge

COMMISSIONER OF SOCIAL SECURITY,                 Stephanie Dawkins Davis
                                                 United States Magistrate Judge

        Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 14, 15)**

## I.    PROCEDURAL HISTORY

    A.    Proceedings in this Court

On February 17, 2016, plaintiff filed the instant suit seeking judicial review
of the Commissioner's decision disallowing social security disability benefits.
(Dkt. 1).  Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District
Judge Arthur J. Tarnow referred this matter to the undersigned for the purpose of
reviewing the Commissioner's decision denying plaintiff's claims.  (Dkt. 3).  This
matter is before the Court on cross-motions for summary judgment.  (Dkt. 14, 15).
The cross-motions are now ready for report and recommendation.

    B.    Administrative Proceedings

On December 10, 2013, plaintiff filed claims for supplemental security

income, period of disability and disability insurance benefits, alleging disability beginning December 13, 2013. (Dkt. 12-2, Pg ID 54). The Commissioner initially denied plaintiff's disability application on April 2, 2014. *Id.* Thereafter, plaintiff requested an administrative hearing, and on December 10, 2014, he appeared with counsel before Administrative Law Judge ("ALJ") Joy Turner, who considered his case *de novo.* (Dkt. 12-2, Pg ID 68-102). In a January 27, 2015 decision, the ALJ determined that plaintiff was not disabled within the meaning of the Social Security Act. *Id.* at Pg ID 54-63. The ALJ's decision became the final decision of the Commissioner on February 26, 2015, when the Social Security Administration's Appeals Council denied plaintiff's request for review. *Id.* at Pg ID 36-40.

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for summary judgment be **GRANTED**, and that findings of the Commissioner be **AFFIRMED**.

## II.    FACTUAL BACKGROUND

### A.    ALJ's Findings

Plaintiff was 50 years old on the alleged disability date. (Dkt. 12-2, Pg ID 61). Plaintiff, a resident of Detroit, Michigan, has a high school education and past relevant work as a material handler, forklift driver and production machine

2

tender, which are classified as medium or heavy and skilled. *Id*. Plaintiff testified that he could not work because of fatigue, limited lifting and walking ability, left-sided weakness, and difficulty with his memory and completing tasks. (Dkt. 12-2, Pg ID 59, 83-84).

The ALJ applied the five-step disability analysis to plaintiff's claims and found at step one that plaintiff did not engage in any substantial gainful activity since the application date. *Id*. at 56. At step two, the ALJ found that plaintiff had the following severe impairments: status-post cerebrovascular accident, status-post myocardial infarction, hypertension, and adjustment disorder. *Id*. At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled one of the listings in the regulations. *Id*. at 57. The ALJ determined the following as to plaintiff's residual functional capacity (RFC):

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except: the claimant could occasionally kneel, crouch, crawl, climb ramps, stairs, ladders, ropes, and scaffolds. He could frequently balance and stoop. He should avoid hazardous machinery and heights. He would be limited to simple routine tasks.

*Id*. at 58. At step four, the ALJ determined that plaintiff could not perform his past relevant work. *Id*. at 61. At step five, the ALJ concluded that based on

plaintiff's age, education, work experience and RFC, there were jobs that existed in significant numbers in the national economy that plaintiff could have performed and, therefore, he was not under a disability from the date of the application through the date of the decision. *Id*. at 61-62.

    B.    <u>Plaintiff's Claims of Error</u>

    Plaintiff claims that the ALJ failed to comply with SSA rules and regulations at Steps Two and Four. According to plaintiff, the ALJ never explains how someone with the severe impairments found by the ALJ can do the exertional demands of light work, given that by definition, light work requires lifting of 20 pounds and significant amounts of walking and standing. Plaintiff believes that the RFC determination was pre-determined as all medical evidence taken as a whole suggests someone who would be incapable of light work.

    Plaintiff also argues that it is unclear from the decision how the ALJ determined that his chronic kidney disease is a non-severe impairment. Plaintiff maintains that the ALJ does not discuss this in any detail in the decision or state what medical opinion she relies on for this decision. According to plaintiff, the medical records reveal that he has significant problems related to kidney disease and this has caused him to be hospitalized. (Dkt. 12-7, Pg ID 404-437). It is well established that "once any one impairment is found to be severe, the ALJ must consider both severe and non-severe impairments in the subsequent steps," and it

becomes "legally irrelevant" that other impairments are not considered severe. *McGlothin v. Comm'r of Soc. Sec.*, 299 Fed. Appx. 516, 522 (6th Cir. 2008). However, plaintiff says the ALJ never evaluated or considered this impairment at the remaining steps.

Next, plaintiff contends that the ALJ's step four determination is significantly flawed. The ALJ states that the medical evidence "fails to provide strong support for the claimant's allegations of disabling symptoms and limitations." (Dkt. 12-2, Pg ID 59). The ALJ goes on to minimize plaintiff's heart problems and stroke symptoms in her one paragraph analysis of the medical records. *Id.* The medical records reflect that plaintiff has severe fatigue; vomiting; and slurred speech; limited mobility; and memory deficits. (Dkt. 12-7, Pg ID 279, 280, 281, 283, 285, 288, 293, 295, 299, 324-327, 337, 346, 348-350, 353-355, 365-367, 472-477, 481-486). Plaintiff agrees with the ALJ that the doctors do note in the medical records that plaintiff's weakness is improving, but says that there is still no logical reasoning to conclude that he was capable of light work on a sustained basis as "improving" does not mean resolved. According to plaintiff, it is clear throughout the medical records that significant weakness remains. Further, the ALJ failed to discuss in her RFC the requirements of light work for her determination that plaintiff would be capable to do the demands of light work. Specifically, plaintiff avers that the ALJ never discusses how plaintiff

can do "a good deal of walking or standing" despite the weakness that the ALJ

acknowledges plaintiff has and will continue to have.  According to plaintiff, the

evidence does not support the ALJ's RFC assessment that he is capable of

sustained work at the light exertional level including work that requires lifting up

to 20 pounds, standing, and walking, on a sustained basis.

Next, plaintiff argues that by incorporating "simple routine tasks" the ALJ

does not comply with SSR 96-8p because she does not give a "function-by-

function" analysis.  Under 96-8p the adjudicator is required to describe the most a

claimant can do functionally, something plaintiff contends the ALJ failed to

comply with SSR 96-8p in this case.  The ALJ references and acknowledges

plaintiff's severe concentration and memory deficits in the decision.  (Dkt. 12-2,

Pg ID 57, 60).  According to plaintiff, however, there are no functional limitations

within the RFC to suggest what plaintiff's functioning limitations are and how

they affect his ability to sustain work.  Plaintiff further contends that the ALJ did

not factor the moderate limitations in concentration into her RFC findings and did

not adequately factor concentration, persistence, or pace into her RFC.  Plaintiff

maintains that the ALJ's nondescript limitations in her decision of "simple routine

tasks" utterly fails to "accurately portray the individual's physical and mental

impairments as required under *Varley*."  In *Ealy v. Commissioner of Social

Security*, 594 F.3d 504 (2010), the Court stated that the hypothetical to the

vocational expert must accurately describe the concentration limitations.  Plaintiff insists that the ALJ makes no attempt to accurately portray plaintiff's severe mental impairments, memory and concentration problems in the instant case. Under *Ealy*, the concentration deficits must be factored.  *See Green v. Comm'r of Soc. Sec.*, 2009 WL 2365557 at *10 (E.D. Mich. July 28, 2009) ("It is difficult to reasonably accept 'moderate' meaning anything less than 20%–30% of the time at work. Thus, 'moderate' concentration problems . . . need to be included or accommodated in some suitable fashion in the hypothetical question at Step 5 of that sequence.").  Thus, plaintiff maintains that the ALJ failed to accommodate and accurately portray his moderate concentration problems and documented memory difficulties.

Plaintiff also takes issue with the ALJ's credibility analysis.  The ALJ states that she does not find claimant credible; however, the ALJ never discusses or evaluates plaintiff's subjective complaints under 20 C.F.R. § 416.929(c). According to plaintiff, factors such as medication side effects and pain symptoms are never discussed in the ALJ decision.  The ALJ states that plaintiff babysits his grandson, prepares meals, and washes dishes.  (Dkt. 12-2, Pg ID 61).  However, even assuming that plaintiff performed all of these activities for limited periods, they do not support the conclusions of the ALJ that he can work an 8 hour day on a sustained basis.  *See Walston v. Gardner*, 381 F.2d 580, 585-586 (6th Cir. 1987)

(activities performed on an intermittent basis, standing alone, do not establish the ability to perform such tasks on a sustained basis). Plaintiff maintains that these limited activities do not equate to working a 40 hour workweek. Further, no other factors were considered under SSR 96-7p. Plaintiff also notes that the ALJ states that plaintiff has had "repeated reports of normal neurological and cardiovascular findings." (Dkt. 12-2, Pg ID 61). While plaintiff says he does not know to what the ALJ is referring and there are not any notations or reference to the medical records; these statements are simply minimizing plaintiff's impairments. According to plaintiff the medical records demonstrate ongoing medical issues from plaintiff's stroke, heart disease, and kidney disease. The ALJ's broad sweeping language is just not an accurate portrayal of the medical records.

C.    Commissioner's Motion for Summary Judgment

The Commissioner argues that substantial evidence supports the ALJ's determination that plaintiff's kidney-related impairments were not severe, and plaintiff does not identify any evidence to the contrary. While plaintiff challenges the ALJ's step-two finding that his kidney impairments were not severe, claiming that "[i]t is unclear from the decision how the ALJ determined that [his] chronic kidney disease is not severe," the Commissioner contends that missing from plaintiff's brief, however, is any evidence that his kidney impairments were in fact severe. Plaintiff only states that he has "significant problems related to the kidney

disease and that this has caused him to be hospitalized." Pl.'s Br. at 12. This is true; plaintiff was first seen at Detroit Medical Center in August 2014 due to abdominal pain (Dkt. 12-7, Pg ID 404-431) and underwent two surgeries to remove renal calculi. (Dkt. 12-7, Pg ID 432-436). Yet, as the ALJ explained, "as recently as September 2014 [less than a month later] office treatment [notes from] his urologist, [show that] the claimant reported feeling well with no hematuria, dysuria, frequency, or flank pain." (Dkt. 12-2, Pg ID 56-57; supported at Dkt. 12-7, Pg ID 450). Indeed, after his surgeries, plaintiff repeatedly stated that he had no kidney-related symptoms and was doing well. (Dkt. 12-7, Pg ID 478, 442, 450). Thus, contrary to plaintiff's claim, the Commissioner maintains that the ALJ did explain why she found that plaintiff's kidney-related impairments were not severe; to wit, because they did not affect his RFC for at least twelve continuous months, as required under Agency regulations. 20 C.F.R. §§ 404.1509, 404.1522(b), 416.909, 416.922(b).

In any case, even if the Court finds that the ALJ erred in failing to provide a more detailed analysis of plaintiff's kidney impairments at step two, remand is still inappropriate because plaintiff does not point to any evidence showing that his kidney impairments affected his RFC for a continuous twelve-month period, much less that they resulted in more significant RFC limitations than the ALJ assessed. Under these circumstances, any error at step two is, at best, harmless. *See Russell*

*v. Comm'r of Soc. Sec*., 2014 WL 5089586, at *4 (E.D. Mich. Oct. 9, 2014) ("The issue is not whether the ALJ properly labeled [the claimant's] impairments as severe or non-severe, but whether the Law Judge adequately included all functional limitations from those impairments into his [RFC] evaluation.").

Next, the Commissioner urges the Court to reject plaintiff's multiple, broad claims as part of his challenge to the ALJ's physical RFC finding. For example, plaintiff asserts that the "ALJ never explains to the reader how someone with the severe impairments found by the ALJ can do the exertional demands of light work," Br. at 11, that "a fair and overall look at the evidence… demonstrates that [it] was not weighed fairly," *id*., and that "there is [ ] no logical reasoning given by the ALJ to allow the reader to conclude that light work would be capable on a sustained basis," Br. at 12. The Commissioner refutes these assertions, noting that the ALJ here engaged in a detailed analysis of the evidence (Dkt. 12-2, Pg ID 59-60), which substantially supports her decision that plaintiff could perform a limited range of light-level work. The ALJ relied on the opinions of consultative examiner Dr. Bina Shaw and state agency physician Dr. Sonia Ramirez-Jacobs to establish plaintiff's physical RFC. *Id*. Dr. Shaw stated that plaintiff could "sit, stand and walk for eight hours a day…[,] bend partially and lift at least 20 pounds without difficulty. He should avoid machinery operation and heights." (Dkt. 12-7, Pg ID 399). Dr. Ramirez-Jacobs determined that plaintiff could perform the

10

requirements of light-level work with some additional postural and environmental restrictions. (Dkt. 12-3, Pg ID 114-116). The ALJ assigned partial weight to these opinions and her ultimate RFC finding is generally consistent with the opinions (compare Dkt. 12-2, Pg ID 58 with Dkt. 12-3, Pg ID 114-116; Dkt. 12-7, Pg ID 399).

The Commissioner also contends that the ALJ reasonably determined that other non-opinion evidence in the record further supported her RFC assessment and the opinions of Drs. Shaw and Ramirez-Jacobs to the extent they were consistent with this assessment. The ALJ acknowledged plaintiff's September 2012 hospitalization due to cardiac-related issues, but correctly observed that his physical examinations after that were essentially normal, except for residual left-sided weakness that steadily improved in the ensuing months. (Dkt. 12-2, Pg ID 59 supported at Dkt. 12-7, Pg ID 338-339, 348-349, 353-354). Indeed, by April 2013, plaintiff's physical examination showed normal motor strength (Dkt. 12-7, Pg ID 354), and plaintiff denied any weakness in subsequent treatment notes. (Dkt. 12-7, Pg ID 479, 482, 485). In his brief, plaintiff agrees that his weakness improved, but states that "[i]mproving does not mean resolved." Br. at 12. The Commissioner acknowledges that generally, this is true, but asserts that the record here shows that plaintiff's weakness is indeed largely resolved. (Dkt. 12-7, Pg ID 354 (finding normal strength upon examination), Dkt. 12-7, Pg ID

479, 482, 485 (denying weakness)).

The Commissioner also argues that, even if plaintiff's weakness did not fully resolve, plaintiff still fails to satisfy his burden of showing how this – or any other physical impairment or symptom – affected his RFC beyond that which the ALJ found.  Apart from the opinions of Drs. Shaw and Ramirez-Jacobs, Dr. Mohamad Rahbar completed a "Certification of Health Care Provider for Employee's Serious Health Condition" in September 2012, a few days after plaintiff's hospitalization.  (Dkt. 12-7, Pg ID 328-331).  Dr. Rahbar stated that plaintiff was unable to perform his job functions due to "[left]-sided weakness," but did not indicate that this symptom would affect his ability to work for at least twelve continuous months, instead describing the "period of incapacity" as "9/7/12 – unknown date."  (Dkt. 12-7, 329-330).  As such, Dr. Rahbar's opinion does not weigh against the ALJ's decision, *see Sharp v. Barnhart*, 152 Fed. Appx. 503, 508 (6th Cir. 2005), and plaintiff fails to point to any other evidence establishing a more restrictive RFC than the ALJ assessed, which is plaintiff's burden.

Concerning the ALJ's mental RFC finding, plaintiff argues that remand is necessary because "there are no functional limitations within the RFC to suggest what [his] functioning limitations [ ] are and how they affect [his] ability to sustain work."  Br. at 13.  Particularly, he claims that "[t]he ALJ never attempts to factor the moderate limitations in concentration into her RFC finding."  *Id*.  The

12

Commissioner says that plaintiff is mistaken, given that the ALJ found, at step

three, that plaintiff exhibited "moderate" limitations in his ability to exercise

concentration, persistence and pace (Dkt. 12-2, Pg ID 57), and then, at the RFC

stage, she restricted him to "simple routine tasks." (Dkt. 12-2, Pg ID 58).

According to plaintiff, the limitation to "'simple routine tasks' utterly fails to

'accurately portray the individual's physical and mental impairments…'" Br. at

14. But the Commissioner points out that this Court has held that "a moderate

impairment in concentration, persistence, and pace does not necessarily preclude

simple, routine, unskilled work." *Harrell v. Colvin*, 2014 WL 3845930, at *5

(E.D. Mich. Aug. 5, 2014) (citations omitted). Rather, the relevant question is

whether the record as a whole supports the ALJ's mental RFC finding. *See id.*

The Commissioner argues that, like in *Harrell*, where the claimant "did not receive

much treatment for her psychological issues," *id.*, the ALJ here noted that "there is

no evidence in the medical record indicating [plaintiff] sought treatment" for his

alleged mental health problems. (Dkt. 12-2, Pg ID 60). Dr. David Hayter, a

consultative examiner who met with plaintiff, opined that he could "attend to

task[s] presented during the examination… is able to understand, retain and follow

simple instructions and [is] generally restricted to performing simple, routine,

repetitive, concrete, tangible tasks." (Dkt. 12-7, Pg ID 396). The ALJ relied on

Dr. Hayer's opinion (Dkt. 12-2, Pg ID 60), and plaintiff does not challenge the

ALJ's decision to do so.  The ALJ also relied in part on the assessment of Dr. Sheila Williams-White, the state agency psychologist.  *Id*.  Dr. Williams-White found that, despite his moderate limitations in concentration, persistence and pace (Dkt. 12-3, Pg ID 112), plaintiff could "initiate, sustain and complete simple tasks."  (Dkt. 12-3, Pg ID 118).  According to the Commissioner, this evidence substantially supports the ALJ's decision that plaintiff could perform "simple routine tasks," and plaintiff does not point to any specific evidence in the record showing otherwise.

Finally, the Commissioner contends that the ALJ's credibility analysis is supported by substantial evidence.  The ALJ relied on the medical evidence, plaintiff's lack of mental health treatment for his alleged psychiatric symptoms, and his reported daily activities to find that he was not as functionally limited as he claimed.  (Dkt. 12-2, Pg ID 59-61).  Plaintiff first seems to argue that the ALJ should have discussed additional factors that weighed in his favor in evaluating his credibility. Yet, the ALJ is not required to expressly discuss every factor for evaluating credibility in her decision.  *See Lang v. Comm'r of Soc. Sec*., 2012 WL 3224137, at *13 (E.D. Mich. Mar. 29, 2012) (collecting cases), rec. dec. adopted, 2012 WL 3205068 (E.D. Mich. Aug. 6, 2012).  The Commissioner says that the ALJ's credibility determination need only be "sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to

14

the individual's statements and the reasons for that weight." *Burbo v. Comm'r of Soc. Sec.*, 877 F.Supp.2d 526, 541 (E.D. Mich. 2012) (citing *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 248 (6th Cir. 2007)).

Next, plaintiff states that his reported daily activities "do not support the conclusions of the ALJ that [he] can work an 8 hour day on a sustained basis." Br. at 15.  As the ALJ noted, plaintiff here reported babysitting his grandson, preparing simple meals, washing dishes, doing light cleaning and laundry, using public transportation, going shopping, playing the bass and visiting friends.  (Dkt. 12-2, Pg ID 61; supported at Dkt. 12-2, Pg ID 87-88; Dkt. 12-6, Pg ID 264-266). The Commissioner points out that this Court has previously affirmed the ALJ's reliance on similar activities to support an adverse credibility determination. *Robinson v. Comm'r of Soc. Sec.*, 2014 WL 4145339, at * 8 (E.D. Mich. Aug. 20, 2014) (affirming the ALJ's reliance on claimant's ability "to attend to personal care tasks, prepare simple meals, perform some household chores (including washing dishes, vacuuming, sweeping, and doing laundry), and generally care for her children").  And, while it may be true – as plaintiff states – that his reported activities are not alone sufficient to support the RFC finding, the ALJ here also relied on other medical evidence to support his RFC and adverse credibility findings.

Lastly, plaintiff points to the ALJ's observation that he repeatedly reported

"normal neurological and cardiovascular findings" (Dkt. 12-2, Pg ID 61).  Br. at

15.  Plaintiff states that he "does not know [to] what the ALJ is referring [and]

there are no notations or reference to the medical records."  Br. at 15.  According

to the Commissioner, plaintiff is incorrect, based on the following from the ALJ's

decision:

> At discharge [from the hospital], the claimant presented
> with a normal neurological exam, including normal gait
> and tandem walk [Dkt. 12-7, Pg ID 366]. On exam
> throughout follow-up treatment, the claimant exhibited
> negative muscle atrophy and routinely denied chest pain,
> shortness of breath, dizziness, numbness or tingling
> [Dkt. 12-7, Pg ID 345, 353, 419]. The claimant presented
> with a regular rate and rhythm with no murmur, gallop,
> or peripheral edema [Dkt, 12-7, Pg ID 419].  The
> claimant's treating physicians repeatedly noted his
> weakness was improving with treatment [Dkt. 12-7, Pg
> ID 337, 345]. As recently as September 2014, the
> claimant denied experiencing any shortness of breath,
> chest pain or abnormal balance [Dkt. 12-7, Pg ID 452].

(Dkt. 12-2, Pg ID 59).  According to the Commissioner, the ALJ was not required

to again recite this evidence when she referenced plaintiff's "repeated reports of

normal neurological and cardiovascular findings" later in her decision.  (Dkt. 12-2,

Pg ID 61).

## III.    DISCUSSION

### A.    Standard of Review

This Court has original jurisdiction to review the Commissioner's final

administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).  In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007).  "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800

17

F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing *Mullen*, 800 F.2d at 545.

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments, that "significantly limits ... physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540. If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion.

19

*McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.  In other words, where

substantial evidence supports the ALJ's decision, it must be upheld.

 B. <u>Analysis</u>

  1. Step two

 At step two of the sequential evaluation process, the ALJ must consider

whether a claimant has a severe impairment and whether the impairment(s) meet

the twelve month durational requirement in 20 C.F.R. § 404.1509. *See* 20 C.F.R.

§§ 404.1520(a)(4), 416.920(a)(4); *see also Simpson v. Comm'r of Soc. Sec.*, 344

Fed. Appx. 181, 188 (6th Cir. 2009) ("At step two, if a claimant does not have a

severe medically determinable physical or mental impairment ... that meets the

durational requirement in § 404.1509 ..., or a combination of impairments that is

severe and meets the durational requirement, then [she] is not disabled.").  "To

surmount the step two hurdle, the applicant bears the ultimate burden of

establishing that the administrative record contains objective medical evidence

suggesting that the applicant was "disabled" as defined by the Act...."  *Despins v.*

*Comm'r of Soc. Sec.*, 257 Fed. Appx. 923, 929 (6th Cir. 2007).  A "severe"

impairment is defined as "any impairment or combination of impairments which

significantly limits your physical or mental ability to do basic work activities."  20

C.F.R. §§ 404.1520(c), 416.920(c).  Basic work activities are defined in the

regulations as "the abilities and aptitudes necessary to do most jobs."  20 C.F.R.

§§ 404.1521(b), 416.921(b). Examples include: (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in routine work settings. *See id.*

It is well established in Sixth Circuit precedent that failure to find an impairment severe at step two of the sequential analysis is not reversible error if the ALJ found another impairment severe and therefore continued with the five-step evaluation. *See e.g.*, *Fisk v. Astrue*, 253 Fed. Appx. 580, 584 (6th Cir. 2007); *Anthony v. Astrue*, 266 Fed. Appx. 451, 457 (6th Cir. 2008). The purpose of step two is "to screen out totally groundless claims." *Nejat v. Comm'r of Soc. Sec.*, 359 Fed. Appx. 574, 576 (6th Cir. 2009). If the ALJ continues with the remaining steps, any error at step two is harmless, so long as the ALJ considered the effects of all medically determinable impairments, including those deemed nonsevere. *See e.g.*, *Cobb v. Colvin*, 2013 WL 1767938 (D. Kan. 2013) ("The Commissioner is correct that the failure to find that additional impairments are severe is not in itself cause for reversal. But this is true only so long as the ALJ considers the effects of all of the claimant's medically determinable impairments, both those he deems severe and those not severe.") (internal quotation marks

omitted); *Jackson v. Astrue*, 734 F.Supp.2d 1343, 1361 (N.D. Ga. 2010) (Where ALJ identified one severe impairment at step two, the failure to identify additional severe impairments at step two was harmless error in child disability case where the ALJ considered all of the plaintiff's impairments at other steps as demonstrated by discussion of testimony and medical history.).

Here, plaintiff seems to suggest that merely because he has a certain impairment or condition, it must be a severe impairment. However, the mere fact that plaintiff carries a certain diagnosis does not necessarily mean he has a severe impairment. *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) ("The mere diagnosis [of a disease] says nothing about the severity of the condition."). Rather, at step two, plaintiff must show that his kidney condition significantly limits his physical or mental ability to do basic work activities. Notably, plaintiff points to no medical opinions in the record or other evidence suggesting that his alleged kidney impairment limited him in any way or imposed any work-related limitations. Therefore, the undersigned concludes that any error that might exist was entirely harmless. *See e.g.*, *Leppien v. Comm'r of Soc. Sec.*, 2016 WL 3661851, at *6 (W.D. Mich. July 11, 2016) (While the plaintiff pointed to evidence that he was diagnosed as morbidly obese, the court concluded that this evidence did nothing to demonstrate that his obesity imposed any additional work-related limitations, and therefore, even if the court assumed that the ALJ

erred in failing to find that the plaintiff's obesity constituted a severe impairment, the error did not call into question the substantiality of the evidence supporting the ALJ's decision.).

2.    RFC

As to his physical limitations, plaintiff maintains that there is not substantial evidence in the record supporting the ALJ's determination that he could perform a limited range of light work.  While plaintiff points to medical records documenting his symptoms and conditions, he does not point to any medical opinions in the record suggesting that he is incapable of light work, or otherwise suggesting that the ALJ's decision is not supported by substantial evidence.  On the other hand, the Commissioner convincingly demonstrates that the ALJ's RFC is supported by substantial evidence in the record.  Specifically, the ALJ relied on the opinions of consultative examiner Dr. Bina Shaw and state agency physician Dr. Sonia Ramirez-Jacobs to establish plaintiff's physical RFC.  Dr. Shaw stated that plaintiff could "sit, stand and walk for eight hours a day…[,] bend partially and lift at least 20 pounds without difficulty.  He should avoid machinery operation and heights."  (Dkt. 12-7, Pg ID 399).  Dr. Ramirez-Jacobs determined that plaintiff could perform the requirements of light-level work with some additional postural and environmental restrictions.  (Dkt. 12-3, Pg ID 114-116).  The ALJ also acknowledged plaintiff's September 2012 hospitalization due to

cardiac-related issues, but correctly observed that his physical examinations after that were essentially normal, except for residual left-sided weakness that steadily improved in the ensuing months.  (Dkt. 12-2, Pg ID 59; Dkt. 12-7, Pg ID 338-339, 348-349, 353-354).  As the Commissioner observes, the record shows that plaintiff's weakness was largely resolved.  (Dkt. 12-7, Pg ID 354 (finding normal strength on examination), Dkt. 12-7, Pg ID 479, 482, 485 (denying weakness)).  In the view of the undersigned, while there may be evidence to the contrary, plaintiff has not established that the ALJ's RFC is unsupported by substantial evidence.

As to plaintiff's mental limitations, the undersigned also finds no reversible error.  Plaintiff contends that the ALJ failed to accommodate his moderate impairment in concentration.  Courts in this District have determined that "there is no bright-line rule requiring remand whenever an ALJ's hypothetical includes a limitation of 'unskilled, routine work' but excludes a moderate limitation in concentration.  Rather, the Court must look at the record as a whole and determine if substantial evidence supports the ALJ's RFC." *Smith v. Comm'r of Soc. Sec.*, 2013 WL 6094745, at *8 (E.D. Mich. Nov. 20, 2013) (citing *Hess v. Comm'r of Soc. Sec.*, 2008 WL 2478325, at *7 (E.D. Mich. June 16, 2008)); *see also Lewicki v. Comm'r of Soc. Sec.*, 2010 WL 3905375, at *3 (E.D. Mich. Sept. 30, 2010).  In other words,

Taken in isolation, the hypothetical limitations

24

> consisting of '[s]imple routine tasks in a low stress
> environment' and 'minimal changes in the work place
> setting' might appear inadequate to account for
> 'moderate' concentrational and pacing deficiencies.
> However, the record as a whole indicates that the
> hypothetical question and the ALJ's finding of
> "moderate" limitations findings are not incompatible.

*Hess*, 2008 WL 2478325, at \*7; *see also Lewicki*, 2010 WL 3905375, at \*3.  In

*Hess*, for example, even though the ALJ omitted a concentration-based limitation

from the hypothetical, this court did not remand because the entire record

supported a finding that plaintiff could perform unskilled work on a sustained

basis. *Hess*, 2008 WL 2478325, at \*8.

The question here is whether the ALJ's conclusion that plaintiff was limited

to simple, routine tasks sufficiently accommodated the ALJ's finding that plaintiff

had moderate difficulties in concentration, persistence, or pace.  This issue has

been addressed numerous times in this District, as noted in *Hicks v. Comm'r*, 2011

WL 6000714 (E.D. Mich. 2011) (*adopted by* 2011 WL 6000701 (E.D. Mich.

2011) (Roberts, J.)).  The undersigned agrees with the holding in *Hicks* that an

RFC and hypothetical simply limiting a claimant to "simple routine tasks" may, in

some instances, fail to capture a claimant's moderate limitation in concentration,

persistence, or pace because the difficulty of a task is not equivalent to the

difficulty of staying on task.  *Id.* (*citing Green v. Comm'r of Soc. Sec.*, 2009 WL

2365557, at \*10 (E.D. Mich. 2009) ("It is difficult to reasonably accept 'moderate'

25

meaning anything less than 20%–30% of the time at work. Thus, 'moderate' concentration problems . . . need to be included or accommodated in some suitable fashion in the hypothetical question at Step 5. . . . Simply including the hypothetical of unskilled jobs with limited contact with co-workers and the public is not sufficient."); *Edwards v. Barnhart*, 383 F. Supp. 2d 920, 930 (E.D. Mich. 2005) ("Plaintiff may be unable to meet quotas, stay alert, or work at a consistent pace, even at a simple, unskilled, routine job.")). Yet, other cases seemingly conclude otherwise. *See e.g.*, *Bohn-Morton v. Comm'r of Soc. Sec.*, 389 F.Supp.2d 804, 807 (E.D. Mich. 2005) (finding that "unskilled" work limitation in RFC was sufficient to account for ALJ's PRTF finding that claimant "often" experiences CPP issues); *Lewicki v. Comm'r of Soc. Sec.*, 2010 WL 3905375, at *3 (E.D. Mich. 2010) ("There may be cases where such moderate limitations preclude the performance of even some simple, unskilled tasks. Plaintiff does not, however, explain why the facts of this particular case require a more detailed hypothetical question to adequately account for his own moderate limitations in concentration, persistence, or pace.").

*Hicks* highlights an important reason the outcomes of these seemingly similar cases are often so different.  The cases within this District that do not remand for the ALJ to include a moderate concentration, persistence, or pace limitation are supported by specific findings of medical professionals that a

26

claimant had moderate difficulties in concentration, persistence, or pace, but could still work on a sustained basis. *Hicks*, 2011 WL 6000701, *4. Judge Michelson distinguished the cases where a medical professional found moderate difficulties in concentration, persistence, or pace, from cases like *Benton v. Comm'r of Soc. Sec.*, 511 F. Supp. 2d 842 (E.D. Mich. 2007) and the facts of *Hicks*, where the ALJ (rather than a medical professional) made the finding of moderate limitations in concentration, persistence, or pace.

In this case, the ALJ relied on two medical opinions for the conclusion that, despite moderate limitations in concentration, plaintiff could perform simple, routine tasks. First, Dr. David Hayter, a consultative examiner who met with plaintiff, opined that he could "attend to task[s] presented during the examination … is able to understand, retain and follow simple instructions and [is] generally restricted to performing simple, routine, repetitive, concrete, tangible tasks." (Dkt. 12-7, Pg ID 396). The ALJ also relied on the assessment of Dr. Sheila Williams-White, the state agency psychologist. *Id*. Dr. Williams-White found that, despite his moderate limitations in concentration, persistence and pace (Dkt. 12-3, Pg ID 112), plaintiff could "initiate, sustain and complete simple tasks." (Dkt. 12-3, Pg ID 118). Thus, the RFC was not flawed and properly accounted for plaintiff's moderate limitation in concentration. Based on the foregoing, the undersigned finds no basis to reverse the findings of the Commissioner in this

regard.

Plaintiff also argued briefly that the ALJ failed to observe the requirements of SSR 96-8p, that the RFC assessment "include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996). The ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved," discuss "why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence," "consider and address medical source opinions," and "[i]f the RFC assessment conflicts with an opinion from a medical source, ... explain why the opinion was not adopted." *Id*. Social Security Ruling (SSR) 96-8p defines RFC as:

> an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule. SSR 96-8p, 1996 LEXIS 5. When assessing the RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, 5 days a week, or an equivalent schedule), and describe the maximum amount of each work-related activity the individual can perform on the evidence available in the record.

*Kane v. Astrue*, 2011 WL 3353866 (N.D. Ohio 2011). Plaintiff's argument in this regard is merely conclusory. (Dkt. 14, Pg ID 503). Where, as here, the ALJ provided a narrative discussion of a claimant's symptoms, their effect on the claimant's work, and how he or she reached those conclusions, the ALJ's narrative substantially complied with the requirements of SSR 96-8p. *Waters v. Astrue*, 2011 WL 3847421, *6 (E.D. Ky. 2011). Therefore, the undersigned finds no failure in the ALJ's narrative or formulation of the RFC such that any remand is necessary or appropriate.

3.   Credibility

Credibility determinations concerning a claimant's subjective complaints are peculiarly within the province of the ALJ. *See Gooch v. Sec'y of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987). "It [i]s for the [Commissioner] and his examiner, as the fact finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001) (quoting *Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir. 1972)). As the Sixth Circuit has held, determinations of credibility related to subjective complaints of pain rest with the ALJ because "the ALJ's opportunity to observe the demeanor of the claimant 'is invaluable, and should not be discarded lightly.'" *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 538 (6th Cir. 1981) (citation omitted). "Upon review, [the court must] accord to the ALJ's

determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which [the court] d[oes] not, of observing a witness's demeanor while testifying." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003). Thus, an ALJ's credibility determination will not be disturbed "absent compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). The ALJ is not required to accept the testimony of a claimant if it conflicts with medical reports, the claimant's prior statements, the claimant's daily activities, and other evidence in the record. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). Rather, when a complaint of pain or other symptoms is in issue, after the ALJ finds a medical condition that could reasonably be expected to produce the claimant's alleged symptoms, he must consider "the entire case record, including the objective medical evidence, statements and other information provided by treating or examining physicians . . . and any other relevant evidence in the case record" to determine if the claimant's claims regarding the level of his pain are credible. SSR 96-7p, 1996 WL 374186, at *1; *see also* 20 C.F.R. § 416.929. Consistency between the plaintiff's subjective complaints and the record evidence 'tends to support the credibility of the [plaintiff], while inconsistency, although not necessarily defeating, should have the opposite effect." *Kalmbach v. Comm'r of Soc. Sec.*, 409 Fed. Appx. 852, 863 (6th Cir. 2011).

In the view of the undersigned, the Commissioner correctly posits that the ALJ's credibility determination is supported by substantial evidence. The ALJ properly relied on the medical evidence, plaintiff's lack of mental health treatment for his alleged psychiatric symptoms, and his reported daily activities to find that he was not as functionally limited as he claimed. (Dkt. 12-2, Pg ID 59-61). Notably, the ALJ is not required to expressly discuss every factor for evaluating credibility in her decision. *See Lang v. Comm'r of Soc. Sec.*, 2012 WL 3224137, at *13 (E.D. Mich. Mar. 29, 2012) (collecting cases), *rec. dec. adopted*, 2012 WL 3205068 (E.D. Mich. Aug. 6, 2012).

Plaintiff insists that his reported daily activities do not support the conclusions of the ALJ that he is able to work an 8 hour day on a sustained basis. However, as the ALJ noted, plaintiff reported babysitting his grandson, preparing simple meals, washing dishes, doing light cleaning and laundry, using public transportation, going shopping, playing the bass and visiting friends. (Dkt. 12-2, Pg ID 61, 87-88; Dkt. 12-6, Pg ID 264-266). As the Commissioner acknowledges, plaintiff's reported activities – standing alone - are insufficient to support the ALJ's credibility findings. Yet, it is evident that the ALJ also relied on other medical evidence to support his RFC and adverse credibility findings. Moreover, an ALJ may reasonably view such daily activities as inconsistent with subjective complaints of disabling limitations. 20 C.F.R. § 404.1529(c)(3)(I); *see also*

31

*Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 392 (6th Cir. 2004) (recognizing that in nearly all cases, an evaluation of a claimant's daily activities is relevant to the evaluation of subjective complaints and ultimately, to the determination of disability); *Heston*, 245 F.3d at 536 (an ALJ may consider claimant's testimony of limitations in light of other evidence of claimant's ability to perform tasks such as walking, going to church, going on vacation, cooking, vacuuming and making beds).  Thus, it was appropriate for the ALJ to consider plaintiff's activities of daily living as one factor in assessing his credibility.

In the view of the undersigned, there is no basis in this record to disturb the credibility findings of the ALJ.  Thus, the undersigned concludes that the findings of the ALJ fall within the reasonable "zone of choice" and are therefore supported by substantial evidence.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for summary judgment be **GRANTED**, and that findings of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule

72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: February 16, 2017　　　　　　　s/Stephanie Dawkins Davis
　　　　　　　　　　　　　　　　　　Stephanie Dawkins Davis
　　　　　　　　　　　　　　　　　　United States Magistrate Judge

33

## **CERTIFICATE OF SERVICE**

I certify that on <u>February 16, 2017</u>, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record.

<div style="margin-left:50%">

<u>s/Tammy Hallwood</u>
Case Manager
(810) 341-7887
tammy_hallwood@mied.uscourts.gov

</div>